IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Pastor Jarvis Robinson, | |
| Plaintiff, | |
| v. | Civil Action No. 24-653-CFC |
| Hertrich Family of Automobile Dealerships, Inc.; Hertrich of New Castle, Inc.; Joshua Figueroa-Sierra; Albert Guckes, Jr., | |
| Defendants. | |

---

Patrick C. Gallagher, JACOBS & CRUMPLAR, P.A., New Castle, Delaware;
Ashley A. Bosche and Robin R. Cockey, COCKEY, BRENNAN & MALONEY,
PC, Salisbury, Maryland

*Counsel for Robinson*

Michele D. Allen and Ashley C. Azato, ALLEN & ASSOCIATES, Wilmington,
Delaware

*Counsel for Defendants*

## **MEMORANDUM OPINION**

January 8, 2026
Wilmington, Delaware

_____
COLM F. CONNOLLY
CHIEF JUDGE

Pastor Jarvis Robinson has sued Hertrich Family of Automobile Dealerships, Inc. (Hertrich Family), its subsidiary Hertrich of New Castle, Inc. (Hertrich), and Hertrich employees Joshua Figueroa-Sierra and Albert Guckes, Jr. D.I. 31. The operative Amended Complaint (Complaint) has four counts. Count I alleges that Hertrich Family and Hertrich engaged in racial discrimination and harassment in violation of the Delaware Discrimination in Employment Act (DDEA). D.I. 31 ¶¶ 36–40. Count II alleges that Hertrich Family and Hertrich unlawfully retaliated against Robinson in violation of the DDEA. D.I. 31 ¶¶ 41–44. Count III alleges that all four Defendants engaged in racial discrimination in the making and enforcement of Robinson's employment contract in violation of 42 U.S.C. § 1981. D.I. 31 ¶¶ 45–50. Count IV alleges that all four Defendants unlawfully retaliated against Robinson in violation of § 1981. D.I. 31 ¶¶ 51–53.

Pending before me is Defendants' motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint. D.I. 32.[1]

_____

[1] Defendants had originally also sought dismissal pursuant to Rule 12(b)(5) for insufficient service. D.I. 33 at 4–5. But as they acknowledged in their reply brief, D.I. 40 at 1, service was effectuated and thus the motion is moot insofar as it is based on Rule 12(b)(5). I will therefore deny the motion as moot insofar as it is brought pursuant to Rule 12(b)(5).

I.

The following factual allegations from the Complaint are assumed to be true and viewed in the light most favorable to Robinson for purposes of the pending motion. *See Umland v. PLANCO Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

In December 2022, Robinson, who is black, began working as a senior maintenance crew member for Hertrich. D.I. 31 ¶ 10. The events giving rise to this case began several months later, in February 2023, when Robinson approached Hertrich's General Manager Michael McErlean and Regional Vice President Robert Darr. D.I. 31 ¶ 14. Robinson alleges that when Darr greeted him, McErlean remarked about Robinson, "Don't mind him, he's just maintenance." D.I. 31 ¶ 14.

About a week later, on March 2, 2023, Robinson approached McErlean again, this time to let him know he was taking a service truck for refueling. D.I. 31 ¶ 15. According to Robinson, McErlean shouted at Robinson in front of customers and other employees, telling Robinson, "when I call you, you answer your motherfucking phone!" D.I. 31 ¶ 15. Robinson reported this incident to his supervisor, Defendant Joshua Figueroa-Sierra, who told him the incident would be investigated. D.I. 31 ¶ 16. Figueroa-Sierra subsequently held a meeting that both Robinson and McErlean attended. D.I. 31 ¶ 17. McErlean "was made to apologize" for the incident at the meeting. D.I. 31 ¶ 17. Also, during the meeting,

2

Robinson expressed "his belief that, because he is Black, he would have been fired if [his and McErlean's] roles had been reversed." D.I. 31 ¶ 17.

About a month after this incident, on April 3, 2023, Robinson hired a contractor to service one of Hertrich's flagpoles. D.I. 31 ¶ 18. According to Robinson, while the contractor was working, another Hertrich General Manager, Craig Munholland, "scream[ed] and curs[ed] [at Robinson] and demanded [that] he tell the contractor to move his vehicle." D.I. 31 ¶ 18. After the contractor left, Robinson reported the incident to Figueroa-Sierra and "expressed additional concerns that Mr. Munholland and Mr. McErlean were trying to micromanage him and undermine his job performance in retaliation for the complaint he raised against Mr. McErlean." D.I. 31 ¶ 19.

Fast forward to April 26, 2023. Robinson alleges that at this time Figueroa-Sierra accused him of purchasing safety cones without permission, even though McErlean had told Robinson the cones were necessary for a project. D.I. 31 ¶¶ 20, 21. Figueroa-Sierra instructed Robinson to return the cones and told him that he was no longer allowed to make purchases without first obtaining express permission from a supervisor. D.I. 31 ¶ 21.

That same day, Robinson filed an internal grievance against McErlean and Munholland and cited the incidents from March 2nd, April 3rd, and earlier that day. D.I. 31 ¶ 23. Robinson stated on the complaint forms that he "believed he

3

was being micromanaged and undermined by the two men on the basis of his race and in retaliation for his previous complaints regarding their treatment of him to Mr. Figueroa[-Sierra]." D.I. 31 ¶ 23.  The next day, April 27, 2023, Hertrich's Assistant Director of Human Resources, April Tucker, interviewed Robinson about his complaints.  D.I. 31 ¶ 25.  She informed Robinson at the conclusion of the interview that she would be meeting with other human resources officials to evaluate his complaints.  D.I. 31 ¶ 25.  Tucker followed up with Robinson on May 1, 2023, and informed him that McErlean and Munholland had been disciplined.  D.I. 31 ¶ 26.

A little more than two months later, on July 3, 2023, Figueroa-Sierra contacted Robinson and accused him of improperly installing a floor-mounted electrical cover plate.  D.I. 31 ¶ 27.  Robinson maintains that he was not involved in the installation of the cover plate and that it would have been improper for him to install the plate because he is not a licensed electrician.  D.I. 31 ¶ 27.

Two days later, on July 5, 2023, Robinson attended a meeting with Figueroa-Sierra, Darr, and Defendant Albert Guckes, Jr., Hertrich's Director of Facilities and Information Technology.  D.I. 31 ¶¶ 9, 28.  During the meeting, Figueroa-Sierra attempted to place Robinson on an Employee Improvement Plan (EIP) for his "substandard work" related to the July 3rd cover plate incident. D.I. 31 ¶ 28.  Robinson refused to sign the EIP, denied his involvement with the

4

installation of the cover plate, and expressed his belief that Figueroa-Sierra was trying to humiliate him and "set him up." D.I. 31 ¶ 28.

A few weeks later, on July 24, 2023, Hertrich Human Resources Director Ann French requested that Robinson attend a meeting with her, Figueroa-Sierra, and Guckes. D.I. 31 ¶ 31. Robinson asked if his attorney could attend the meeting, "citing his previous dissatisfaction with Hertrich's responses to his complaints and his fears that he was being wrongfully targeted." D.I. 31 ¶ 31. French denied Robinson's request and explained that the meeting was "internal." D.I. 31 ¶ 31. In response, Robinson refused to attend the meeting. D.I. 31 ¶ 32. He also communicated his belief that he was being targeted for his internal grievance and being punished "more harshly because of his race." D.I. 31 ¶ 32. Soon after, Guckes terminated Robinson based on his refusal to comply with the July 5th EIP, his failure to attend EIP meetings, and his substandard work performance. D.I. 31 ¶ 33.

II.

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011). Detailed factual allegations are not required, but the complaint must include more

5

than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  A plaintiff must detail "enough facts to raise a reasonable expectation that discovery will reveal evidence of" each necessary element of the claims alleged in the complaint. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

## A.

First, I address Defendants' arguments to dismiss Count I.  Count I alleges that Hertrich Family and Hertrich (i) engaged in racial discrimination/harassment and (ii) created a hostile work environment in violation of the DDEA.  D.I. 31 ¶¶ 36–40.

## 1.

Robinson alleges in Count I that he was subjected to racial harassment and discrimination in violation of the DDEA because "Messrs. McErlean, Munholland, and Figueroa[-Sierra] engaged in a persistent severely hostile course of conduct when they verbally assaulted and belittled [him] in front of employees and customers, micromanaged his job duties, and falsely accused him of poor work performance and insubordination."  D.I. 31 ¶ 37.  Both sides agree that to prevail on this claim, Robinson would have to show: (1) he is a member of a protected class; (2) he was qualified for the position he sought to attain or retain; (3) he

6

suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. D.I. 33 at 6; D.I. 37 at 17.  The two sides dispute whether Robinson has plausibly alleged the fourth element—i.e., that the adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination. *See, e.g.*, D.I. 37 at 17.

In determining whether Robinson has plausibly alleged circumstances that give rise to an inference of discrimination, I look to Title VII cases, as Delaware courts have said those cases are instructive in evaluating DDEA claims because the statutes' language is substantially similar. *See, e.g.*, *Wagenhoffer v. Visionquest Nat'l Ltd*, 2016 WL 3947952, at *3 (Del. Super. Ct. July 14, 2016).  A plaintiff can support an inference of discrimination in Title VII cases "in a number of ways, including, but not limited to, comparator evidence, evidence of similar racial discrimination of other employees, or direct evidence of discrimination from statements or actions by her supervisors suggesting racial animus." *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir. 2010).

Robinson says that "racial animus may be inferred when actions of white employees go unpunished while similar actions of black employees are punished" and that such an inference is reasonable here because Figueroa-Sierra, "who is Hispanic, punished . . . Robinson, who is black, for improperly installing a cover

7

plate," even though "Robinson had nothing to do with the installation of the cover plate while Figueroa[-Sierra] was responsible for overseeing its installation." D.I. 37 at 18–19. As best I can tell, Robinson is arguing that Figueroa-Sierra is a nonblack comparator employee who was treated more favorably.

"An inference of discrimination may arise" based on comparator evidence— that is, if "similarly situated employees of a different race received more lenient treatment than that afforded plaintiff." *See Ewell v. NBA Props., Inc.*, 94 F. Supp. 3d 612, 624 (D.N.J. 2015). Comparator employees must be similar in "all relevant respects" to the plaintiff. *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 222–23 (3d Cir. 2009) (citation omitted). Relevant factors in making this determination "include, but are not limited to, whether the comparators '1) had the same job description, 2) were subject to the same standards, 3) were subject to the same supervisor, and 4) had comparable experience, education, and other qualifications.'" *Taylor-Bray v. Del. Dep't of Servs. for Child., Youth & Their Fams.*, 627 F. App'x 79, 83 (3d Cir. 2015) (citation omitted).

If Robinson is indeed trying to make a comparator argument about Figueroa-Sierra, he fails because Figueroa-Sierra is not similarly situated in all relevant aspects. Figueroa-Sierra is Robinson's supervisor, D.I. 31 ¶ 16, and thus, the two do not have the same job description. Robinson has not alleged that the two were subject to the same standards. *See generally* D.I. 31. Nor has he alleged

8

the two had the same supervisor or that they have comparable experience, education, and other qualifications. *See generally* D.I. 31. Robinson has not pointed to anything else that would suggest Figueroa-Sierra is similarly situated to him. Robinson's allegations related to Figueroa-Sierra, therefore, are not comparator evidence that would give rise to an inference of discrimination.

Robinson next says that "it is reasonable to infer that an employee is being subjected to unlawful discrimination when the[] [employee] [is] one of the only members of a protected class and [is] singled out for surveillance and scrutiny by [the employee's] supervisor with no apparent relationship to the[] [employee's] job performance." D.I. 37 at 18. Robinson says that such an inference is reasonable here because he "was only one of two black employees at Hertrich," "had just been awarded a performance-based raise," and "[m]ere weeks later, and once his white supervisors began berating and demeaning him, [he] was told he needed a supervisor's permission to perform basic job duties," such as to purchase cones. D.I. 37 at 18. In making this argument, Robinson attempts to draw parallels between this case and two Title VII cases in which the court said it was reasonable to conclude that the plaintiff was discriminated against because of a protected characteristic: *Strothers v. City of Laurel, Md.*, 895 F.3d 317 (4th Cir. 2018) and *Ocheltree v. Scollon Productions, Inc.*, 335 F.3d 325 (4th Cir. 2003). D.I. 37 at 18. Robinson says that "[l]ike the plaintiffs in *Strothers* and *Ocheltree*, it was entirely

9

reasonable for [him] to infer he was being singled out because of his race." D.I. 37 at 18. Robinson's appeals to *Strothers* and *Ocheltree*, however, are unavailing.

Start with *Strothers*. There, the court held that the plaintiff had "ample reason to believe that she was being mistreated 'because of' her race" by her supervisor. 895 F.3d at 329. The court reached that conclusion based on several "considerations." *Id.* at 330. Specifically, the plaintiff's supervisor explicitly stated she "wanted to hire someone of a different race." *Id.* at 329. And according to former employees, her supervisor did not like black people and, in the past, had subjected black employees to differential treatment. *Id.* at 330. Against this backdrop, the plaintiff "was also aware that she was the only black subordinate employee and that she was the only one whom [her supervisor] chose to surveil and scrutinize." *Id.* "Moreover, [the plaintiff] being selected for such scrutiny apparently had nothing to do with her job performance, as [her supervisor] herself acknowledged that [the plaintiff] did everything as instructed." *Id.*

Unlike the plaintiff in *Strothers*, Robinson has not alleged here facts from which race-based discrimination could plausibly be inferred. Robinson does allege that he received a performance-based raise before the events at issue, D.I. 31 ¶ 10, and that he was one of two black employees at Hertrich, D.I. 31 ¶ 11. But these allegations are not enough to justify an inference of discrimination, and there are no circumstances alleged to have occurred before Robinson's alleged mistreatment

10

that raise an inference of race-based discrimination. There is no allegation, for instance, that Hertrich managers or employees do not like black people or that Hertrich engaged in historical differential treatment of black employees. *See generally* D.I. 31. There is also an absence of contemporaneous "considerations" like those in *Strothers*. Robinson does not allege, for example, that the other black employee at Hertrich was subjected to mistreatment or discrimination. *See generally* D.I. 31. Nor is there any alleged statement injecting race into the equation like the supervisor's statement in *Strothers* that she wanted to hire someone of a different race. *See generally* D.I. 31.

In *Ocheltree*, the court held that a reasonable jury could find that the plaintiff was harassed in her workplace because of her sex. 335 F.3d at 332–33. The court reached this conclusion in part because no male employee was subjected to the "same embarrassment" as the plaintiff, the company's only female employee. *Id.* at 332. The court also relied on the fact that much of the at-issue conduct was "particularly offensive to women and was intended to provoke [the plaintiff's] reaction as a woman." *Id.* Here, by contrast, Robinson does not allege that the conduct he complains of was ever directed at any other black person, and the conduct itself is offensive generally, not particularly offensive to black persons. *See generally* D.I. 31. Telling a person to answer his "motherfucking phone," screaming at someone in front of his fellow employees and customers about where

11

a contractor's vehicle is parked, and unfairly accusing an employee of ordering cones without permission are all rude and inappropriate. But they are not inherently or impliedly racial, and they do not without more suggest or connote racial animus.

Finally, Robinson says that "when the operative pleading details specific events where an employee was treated differently, identifies key supervisors by race and company title, and identifies 'adverse employment actions notwithstanding satisfactory employment performances', that pleading satisfies the 12(b)(6) standard." D.I. 37 at 19 (citation omitted). In support of this proposition, Robinson cites *Keys v. Humana, Inc.*, 684 F.3d 605 (6th Cir. 2012). There, the plaintiff alleged the defendant "had a pattern or practice of discrimination against African American managers and professional staff in hiring, compensation, promotion, discipline, and termination" and "detail[ed] several specific events in each of those employment-action categories where . . . she was treated differently than her Caucasian management counterparts." *Id.* at 610. She also "identifie[d] the key supervisors and other relevant persons by race and either name or company title" and "allege[d] that [she] and other African Americans received specific adverse employment actions notwithstanding satisfactory employment performances." *Id.* The court held that her complaint, therefore, "easily state[d] a plausible claim" of racial discrimination. *Id.*

Like the plaintiff in *Keys*, Robinson alleges here the race and titles of the employees involved. *See generally* D.I. 31. But that is where the similarities between *Keys* and this case end. And simply alleging the race and title of the employees involved is not (and cannot be) enough to raise an inference of discrimination. Unlike the plaintiff in *Keys*, Robinson has not alleged a pattern or practice of discrimination. *See generally* D.I. 31. He has not detailed events in which he was treated differently than employees of other races. *See generally* D.I. 31. Nor has he shown that he or other black employees suffered specific adverse employment actions despite satisfactory employment performance. *See generally* D.I. 31. Robinson does not even mention other black employees suffering adverse employment actions in the Complaint. *See generally* D.I. 31. And as for his own employment record, Robinson's Complaint shows that his supervisor, Figueroa-Sierra, took issue with his employment performance, as evidenced by the cover plate and cone incidents. D.I. 31 ¶¶ 20, 27.

In sum, then, Robinson has not raised an inference of discrimination based on "comparator evidence, evidence of similar racial discrimination of other employees, . . . direct evidence of discrimination from statements or actions by [his] supervisors suggesting racial animus," or any other means. *Golod*, 403 F. App'x at 702 n.2. What he has alleged is that he was subjected to rude, unkind, and inappropriate treatment. But discrimination laws are not a general civility

13

code. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Accordingly, I will dismiss Robinson's racial discrimination claim in Count I.

2.

Robinson also alleges in Count I that Defendants Hertrich Family and

Hertrich subjected him to a hostile work environment in violation of the DDEA.

Specifically, Robinson alleges that:

> Messrs. McErlean, Munholland, and Figueroa[-Sierra]
> engaged in a persistent severely hostile course of conduct
> when they verbally assaulted and belittled . . . Robinson in
> front of employees and customers, micromanaged his job
> duties, and falsely accused him of poor work performance
> and insubordination.  This persistent and severe
> harassment altered the conditions of [his] employment and
> created an abusive and hostile work environment.

D.I. 31 ¶ 37.

To prevail on a hostile work environment claim under Title VII, Robinson

would have to show: (1) he suffered intentional discrimination because of his

status as a member of a protected class; (2) the discrimination was severe or

pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination

would detrimentally affect a reasonable person in similar circumstances; and

(5) the existence of respondeat superior liability.  *See Mandel v. M & Q Packaging*

*Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citation omitted).  The same is true for a

hostile work environment claim under the DDEA.  *See, e.g.*, *Petrocelli v.*

*DaimlerChrysler Corp.*, 2006 WL 733567, at *4 (D. Del. Mar. 22, 2006) ("Since

14

claims of employment discrimination under the Delaware [Discrimination in Employment] Act are analyzed in the same way as claims under Title VII, *Giles v. Family Court*, 411 A.2d 599, 601–02 (Del.1980), the following analysis uses the Title VII framework, and the conclusions apply equally to the claims of hostile work environment and disparate treatment under the Delaware Act.").

Defendants first argue that Robinson has not plausibly alleged the first element of his claim: that he suffered intentional discrimination because of his race. D.I. 33 at 11. To this, Robinson responds, "[A]s explained in the preceding section [related to his racial discrimination claim], the Amended Complaint pleads enough information to plausibly suggest the harassment was racially motivated." D.I. 37 at 20. But, as explained in the previous section of this Memorandum Opinion, Robinson has failed to show that the mistreatment he suffered was racially motivated. Pleading that he was one of two black employees and that he worked at Hertrich without incident for three months before Defendants' alleged mistreatment—mistreatment that is not inherently or impliedly racial—is not (and cannot be) enough.

But even if Robinson plausibly alleged the first element of his hostile work environment claim, I would still dismiss his claim because he has failed to plausibly allege the second required element: that the discrimination he faced was severe or pervasive. In Title VII cases, conduct is severe or pervasive when it is

15

sufficient "to alter the conditions of [the employee's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (citation and internal quotation marks omitted). This is a high bar. *See Sousa v. Amazon.Com, Inc.,* 2022 WL 4548910, at *2 (D. Del. Sept. 29, 2022) (Bibas, J., sitting by designation). Indeed, Robinson must show the mistreatment he complains about was "extreme." *See Faragher*, 524 U.S. at 788. "To decide whether the conduct was extreme enough, we consider all the circumstances, including how frequent and severe it was and whether it was physical or verbal." *Sousa*, 2022 WL 4548910, at *3 (citations omitted).

Robinson contends that "Hertrich's conduct was frequent, severe, humiliating, and unreasonably interfered with his work performance." D.I. 37 at 20. In support of this assertion, Robinson says he "was degraded, yelled at, and cursed at by McErlean and Munholland in front of coworkers and customers" and that Figueroa-Sierra "falsely accused [him] of spending company money without authorization [and] mishandling projects which were the responsibility of his supervisors, instructed [him] to get permission from his supervisors to perform basic job duties, and attempted to strongarm him into accepting unfounded disciplinary measures." D.I. 37 at 20 (citing D.I. 31 ¶¶ 14–15, 18, 20–22, 27–28).

These alleged circumstances constitute neither severe nor pervasive discriminatory treatment. Start with Robinson's allegations related to McErlean

16

and Munholland "demeaning" or yelling at him. According to the Complaint, Robinson was yelled at twice: once when he was told to get a contractor to move his vehicle, D.I. 31 ¶18, and once when McErlean told him to "answer [his] motherfucking phone," D.I. 31 ¶ 15. He alleges he was "demeaned" a total of three times: twice during the incidents in which he was yelled at and one other time, when McErlean stated about Robinson, "Don't mind him, he's just maintenance." D.I. 31 ¶ 14. These incidents are not "sufficiently continuous and concerted" to be deemed pervasive. *See Faragher*, 524 U.S. at 787 n.1 (internal quotation marks omitted). While rude and inappropriate, these incidents are also not severe. They are, in sum, insufficient to alter the conditions of Robinson's employment and create an abusive working environment.

Robinson's allegations related to Figueroa-Sierra also fall short, even when combined with his allegations related to McErlean and Munholland. Robinson alleges that Figueroa-Sierra falsely accused him of purchasing safety cones without authorization, D.I. 31 ¶ 20, and improperly installing a cover plate, D.I. 31 ¶ 27. Following the safety cone incident, Figueroa-Sierra also instructed Robinson to seek permission from a supervisor before purchasing equipment going forward. D.I. 31 ¶ 21. Robinson also alleges that Figueroa-Sierra "attempted to place [him] on an Employee Improvement Plan (EIP), citing his allegedly 'substandard work'" related to the cover plate incident. D.I. 31 ¶ 28. These incidents may have been

17

uncomfortable, but they are routine workplace events that cannot be considered in any sense extreme or severe. And because they were episodic, they were not pervasive. *See Sousa,* 2022 WL 4548910, at *3.

Of course, I consider these incidents as a whole, not in isolation. *See Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 149 (3d Cir. 1999). And taken together, I find that all these allegations do not add up to severe or pervasive discrimination. Accordingly, I will dismiss Robinson's hostile work environment claim in Count I.

B.

I next address Defendants' arguments to dismiss Count II. Count II alleges that Hertrich Family and Hertrich engaged in unlawful retaliation in violation of the DDEA. Specifically, Robinson alleges that:

> Hertrich fired [him] because he complained of racial discrimination. [His] April 26, 2023 complaint was based upon an objectively reasonable belief that Messrs. McErlean, Munholland, and Figueroa[-Sierra]'s verbal assaults, micromanaging, and false accusations of poor performance and insubordination constituted intentional discrimination. Within a matter of weeks, Hertrich fired . . . Robinson for allegedly poor work performance and his refusal to cooperate with what was ostensibly their efforts to harass him. In doing so, Defendants did not even attempt to disguise the fact that . . . Robinson's termination arose solely from his discrimination complaint.

D.I. 31 ¶ 42.

18

To prevail on a retaliation claim under Title VII, Robinson would have to show: (1) he engaged in conduct protected by Title VII; (2) his employer took an adverse action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. *See Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006). "Retaliation claims under the DDEA . . . should also be analyzed using the same framework." *Lehmann v. Aramark Healthcare Support Servs., LLC*, 630 F. Supp. 2d 388, 391 (D. Del. 2009).

The parties dispute whether Robinson has plausibly alleged he engaged in protected activity by filing an internal grievance related to the March 2nd, April 3rd, and April 26th incidents. *See, e.g.*, D.I. 33 at 15; D.I. 37 at 13. Robinson must plausibly allege that when he filed the grievance, he held "an objectively reasonable belief, in good faith, that the activity [he opposed] is unlawful under [the DDEA]." *See Moore*, 461 F.3d at 341. The parties do not dispute that Robinson believed in good faith that by filing his internal grievance he was opposing race-based discrimination. Their dispute turns instead on whether his belief was objectively reasonable.

Robinson alleges that he "was one of only two Black employees," D.I. 31 ¶ 11, and that before his internal grievance, he was degraded, yelled at, cursed at, and accused of spending company money without permission, D.I. 31 ¶¶ 14–15,

18, 20–22.  Against this backdrop, Robinson says that "[a] reasonable person in

[his] shoes could conclude this was race-based" discrimination.  D.I. 37 at 13.  I

disagree.  No reasonable person could believe that the incidents Robinson

complained about on April 26th—being told "when I call you, you answer your

motherfucking phone," being screamed at and instructed to tell a contractor to

move his vehicle, and being accused of improperly purchasing safety cones

without permission—without more were race-based discrimination.  They are, in

fact, entirely devoid of racial undertones.  And to Robinson's point about being

one of two black employees, that is also not enough for a reasonable person to

believe the three incidents in question (which, again, have no racial undertones)

were race-based discrimination.  The implausibility of Robinson's claim of

race-based discrimination is even clearer when one considers that Robinson does

not allege that any other black employee—past or present—was subject to similar

mistreatment.

      These events are manifestly unpleasant and unprofessional.  They do not,

however, plausibly suggest that Robinson was engaged in protected activity when

he filed internal grievances about them.  Because it was not objectively reasonable

for Robinson to conclude he was engaged in protected activity when he filed his

April 26th internal grievance, I will dismiss Count II.

C.

Turning to Defendants' arguments to dismiss Count III: This count alleges

that all Defendants engaged in racial discrimination in the making and enforcement

of Robinson's employment contract in violation of § 1981.  D.I. 31 ¶¶ 45–50.

"To prevail [on a § 1981 racial discrimination claim,] a plaintiff must

initially plead and ultimately prove that, but for race, [he] would not have suffered

the loss of a legally protected right."  *Comcast Corp. v. Nat'l Ass'n of Afr.*

*Am.-Owned Media*, 589 U.S. 327, 341 (2020).  In Count III, Robinson alleges

merely that "race was clearly *a* motivating factor" in his termination.  D.I. 31 ¶ 47

(emphasis added).  That race was a motivating factor—potentially one of many—

in his firing does not amount to an allegation that Robinson would have suffered

the loss of a legally protected right *but for* his race.  And without more, I must

dismiss Count III.

D.

Lastly, I address Defendants' arguments to dismiss Count IV.  Count IV

alleges all Defendants retaliated against Robinson for reporting racial

discrimination in violation of § 1981.  D.I. 31 ¶¶ 51–53.  Specifically, Robinson

alleges that:

> Hertrich fired [him] because he complained of racial
> discrimination. [His] April 26, 2023 complaint was based
> upon an objectively reasonable belief that Messrs.
> McErlean, Munholland, and Figueroa[-Sierra]'s verbal

21

> assaults, micromanaging, and false accusations of poor
> performance and insubordination constituted intentional
> discrimination. Within a matter of weeks, Hertrich fired
> him for poor work performance. In doing so, Defendants
> did not even attempt to disguise the fact that [his]
> termination arose solely from his discrimination
> complaint. Defendants acted in reckless disregard of [his]
> federally protected rights.

D.I. 31 ¶ 52.

Liability under § 1981 encompasses claims of retaliation. *CBOCS West, Inc.
v. Humphries*, 553 U.S. 442, 457 (2008). "To establish a retaliation claim in
violation of § 1981, a plaintiff must establish the following *prima facie* case:
'(1) [he] engaged in [protected] activity . . . ; (2) the employer took an adverse
employment action against [him]; and (3) there was a causal connection between
[his] participation in the protected activity and the adverse employment action.'"
*Castleberry v. STI Grp.*, 863 F.3d 259, 267 (3d Cir. 2017) (quoting *Moore*, 461
F.3d at 340–41) (alterations in the original).

As with Count II, Defendants argue that "Robinson never engaged in
protected activity by reporting" the March 2nd, April 3rd, and April 26th incidents
and thus has failed to plausibly allege the first element of his claim. D.I. 33 at 20.
Here, too, I agree. Robinson did not hold an objectively reasonable belief that he
had been subjected to racial discrimination when he filed his internal grievance on
April 26th. *See Castleberry*, 863 F.3d at 267 (explaining that a § 1981 plaintiff
must have acted under "a good faith, reasonable belief" that he was reporting

22

unlawful conduct).  The events he complained about in the grievance, though unpleasant, are entirely disconnected from race.  And Robinson has not given any plausible reason why they amount to racial discrimination.  Accordingly, he did not engage in protected activity when he reported the incidents on April 26th.  I must, then, dismiss Count IV.

III.

For the reasons stated above, I will dismiss Robinson's Complaint (D.I. 31) for failure to state a claim upon which relief can be granted.

The Court will issue an Order consistent with this Memorandum Opinion.